UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANGEL MIGUEL MAURERA CASTRO,

Petitioner,

v.

BRUCE SCOTT et al.,

Respondents.

CASE NO. 2:26-cv-03801-LK

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

This matter comes before the Court on Petitioner Angel Miguel Maurera Castro's Petition for Writ of Habeas Corpus. Dkt. No. 1. For the reasons described below, the Court grants the petition.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela who "applied for admission to the United States at the Brownsville, Texas Port of Entry" on July 21, 2024. Dkt. No. 6-2 at 2. On that same day, Respondents served a form I-862, Notice to Appear, charging him as removable from the

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

United States under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), and ordering him to appear before an immigration judge ("IJ") in removal proceedings. *Id.* at 2. Petitioner was "paroled into" the United States "pending" a removal hearing under 8 U.S.C. § 1229a. *Id.* at 4.

On August 24, 2026, Petitioner was arrested by the Belgrade Police Department in Gallatin County, Montana, and charged with assault with a weapon. Dkt. No. 6-3 at 3. United States Immigration and Customs Enforcement ("ICE") placed an immigration detainer on Petitioner. Dkt. No. 6-4 at 2. On August 28, 2026, ICE detained Petitioner and later transferred him to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he remains detained. Dkt. No. 5 at 1–2; Dkt. No. 6-3 at 3; Dkt. No. 6-5 at 4. On September 10, 2026, the State of Montana dismissed the assault charge without prejudice. Dkt. No. 1 at 33.

Petitioner filed the present petition on October 6, 2026. Dkt. No. 1. He seeks immediate release from custody or, alternatively, a bond hearing. *Id.* at 11. Respondents[2] filed their return on October 21, 2026. Dkt. No. 5. Petitioner did not file a traverse.[3]

## II. DISCUSSION

Petitioner argues that his continued detention is unlawful because Respondents violated the Due Process Clause of the Fifth Amendment and the INA by (1) incorrectly detaining him under Section 1225(b) and (2) failing to provide him with any pre-deprivation process. Dkt. No. 1 at 8–11. He requests immediate release or a bond hearing. *Id.* at 11. Respondents contend that Petitioner

[2] Although the warden of the NWIPC has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[3] Counsel filed a notice of appearance on Petitioner's behalf, Dkt. No. 7, but did not file anything else in this case.

is lawfully detained as an arriving alien under Section 1225(b)(2)(A). Dkt. No. 5 at 3. Respondents argue that Petitioner's due process rights extend no further than designated by statute and that he can only be released under "discretionary parole by DHS under 8 U.S.C. § 1182(d)(5)(A)." *Id.* at 6–7.

**A. Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation

proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Petitioner has Established a Due Process Violation**

Petitioner contends that he is detained under 8 U.S.C. § 1226(a) because he "was apprehended in the interior of the United States, in Gallatin County, Montana, more than two years after he presented himself at a port of entry[.]" Dkt. No. 1 at 8. Respondents disagree, arguing that "[a]n arriving alien remains an arriving alien even if paroled pursuant to 8 U.S.C. § 1182(d)(5) and even after any such parole is terminated or revoked." Dkt. No. 5 at 5.

Assuming without deciding that under these circumstances, the governing statute is 8 U.S.C. § 1225(b)(2), Petitioner has demonstrated that the government failed to follow federal law in detaining him.

1. <u>Applicability of the Due Process Clause</u>

For the reasons set forth in the Court's orders in *Dieng v. Hermosillo*, 2:26-cv-00190-LK, 2026 WL 411857, at *3–5 (W.D. Wash. Feb. 13, 2026), and *Albornoz v. Hermosillo*, No. 2:25-CV-02713-LK, 2026 WL 444983, at *3–4 (W.D. Wash. Feb. 17, 2026), the Court finds that the Due Process Clause is applicable in this case and adopts the analysis from those orders. The Court also reiterates that humanitarian parole under Section 1225(b) can establish the same kinds of liberty interests described in *Morrissey v. Brewer*, 408 U.S. 471 (1972). *Flores Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases). Here, Petitioner has established such an interest. Although he was only 17 years old when he entered the United States, he has established ties here: he lived in the community, graduated from high school in June 2025, and remained in Bozeman, Montana to work and help support his family. Dkt. No. 1 at 2, 31, 35–49.

Because the constitutional process required for deprivation of a noncitizen's liberty interests is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place," *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022), the Court addresses the statutory process required here.

2. Statutory Violation

Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). In other words, if a noncitizen has been granted parole, it means that a DHS official with authority decided that there were either "urgent humanitarian reasons" or "significant public benefit" justifying the parole of that individual, and that the individual did not pose a security or flight risk.

Parole automatically terminates if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized," and "no written notice shall be required" for automatic termination. 8 C.F.R. § 212.5(e)(1). Otherwise, for parole to be terminated, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States"; and (2) written notice must be provided to the noncitizen. 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]").

Respondents admit that the "record does not contain a document reflecting a determination under 8 C.F.R. § 212.5(e)(2)(i) or a document showing when or how [Petitioner's] prior parole

ended," and therefore the Respondents "do not argue that any particular regulatory process for termination of parole was followed." Dkt. No. 5 at 7.

Based on Respondents' concession that the government failed to follow its own regulations in terminating Petitioner's parole, the Court concludes that Respondents violated Petitioner's statutory rights. *See Gabriel v. Bondi*, No. 25-CV-4298 (KMM/EMB), 2025 WL 3443584, at *6 (D. Minn. Dec. 1, 2025) ("Without any suggestion that such a determination [as that required under the statute and regulation] occurred, Respondents could not have complied with § 1182(d)(5)(A) and Part 212.5(e)(2)(i) in revoking Petitioner's parole," and accordingly, "the revocation, and[] . . . Petitioner's detention[] is unlawful.").[4]

3. Due Process Violation

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v.*

[4] *See also Delfin-Ricardo v. Noem*, No. 26-CV-136-RSH-BJW, 2026 WL 353357, at *2 (S.D. Cal. Feb. 9, 2026) ("Courts have determined, in cases where DHS fails to follow its own regulations in revoking humanitarian parole, that the resulting detention is unlawful and the petitioner's release should be ordered."); *Savane v. Francis*, 801 F. Supp. 3d 483, 491–92 (S.D.N.Y. 2025) ("Respondents' revocation of . . . parole under § 1182(d)(5)(A) without any process violated Petitioner's due process rights . . . because [Respondents] did not comply with the statutorily required process for revoking that parole."); *Orellana v. Francis*, No. 25-CV-04212 (OEM), 2025 WL 2402780, at *7 (E.D.N.Y. Aug. 19, 2025) (reasoning that "by failing to lawfully revoke [Petitioner's] parole, Respondents lacked the authority to arrest Petitioner"), *reconsideration denied in relevant part*, No. 25-CV-04212 (OEM), 2025 WL 2822640, at *4 (E.D.N.Y. Oct. 3, 2025) (finding again that "by failing to lawfully revoke [Petitioner's] parole, Respondents lacked the authority to arrest Petitioner" and reasoning "[a]s such, the revocation of Petitioner's parole was unlawful and his resulting detention invalid"); *Zavorin v. Wamsley*, No. 2:26-CV-00173-DGE, 2026 WL 309733, at *4 (W.D. Wash. Feb. 5, 2026) (granting habeas petition when Respondents revoked Petitioner's humanitarian parole without following the procedural requirements set forth in 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i)).

*Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

*(a) Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

As explained above, Petitioner possesses a protected interest in his "continued liberty." *Morrissey*, 408 U.S. at 481–84 (citation modified).

*(b) Procedural Protections*

To determine what procedures are constitutionally sufficient to protect petitioner's liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that Mathews' three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see*, *e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Petitioner has a private interest in remaining out of immigration detention. *See Morrissey*, 408 U.S. at 482. Despite his liberty interest being "indeterminate" under humanitarian parole, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* This factor favors Petitioner.

Turning to the second factor, for the reasons stated in this Court's order in *Flores Torres*, due process at least requires that (1) the government justify the basis for re-detention, as prescribed by the statute and its implementing regulations, and (2) Petitioner be given "the opportunity to be heard" with respect to the government's basis for re-detention under the applicable statutory and regulatory framework "at a meaningful time and in a meaningful manner." 2026 WL 145715, at *7 (citation modified). Here, as discussed above, the government did not follow the procedures required by its own regulations.[5] The risk of erroneous deprivation is significant where the

---

[5] *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("[T]he risk of an erroneous deprivation of [petitioner's] interest [in remaining out of custody pursuant to her humanitarian parole] is high as Petitioner's parole was revoked without providing her a reason for revocation or giving her an opportunity to be heard").

government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained. "[T]he additional procedural safeguards identified in 8 C.F.R. § 212.5 are not only valuable for preventing the erroneous deprivation of an important interest, they are required by the Section 1225 statutory scheme[.]" *O.F.B. v. Maldonado*, 810 F.Supp.3d 394, 404 (E.D.N.Y. 2025); *see also de la Rosa Espinoza v. Guadian*, No. 20-3126-JWL, 2020 WL 3452967, at *8 (D. Kan. June 24, 2020) ("[T]he applicable statutory process shapes Petitioner's procedural due-process rights[.]"). This factor favors Petitioner.

With respect to the last factor, "the government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations." *O.F.B.*, 810 F.Supp.3d at 404–05. (citation modified). Therefore, this factor too weighs in favor of Petitioner.

Under *Mathews*, the Court finds that Respondents failed to provide Petitioner with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful.

## III. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus, Dkt. No. 1, is GRANTED, and the Court ORDERS as follows:

1. Respondents shall release Petitioner from custody within 24 hours of this Order, subject to the terms of his most recent parole agreement;
2. Respondents shall file a Status Report by November 20, 2026, confirming that Petitioner has been released.

Dated this 17th day of November, 2026.

Lauren King
United States District Judge